# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 1309, AFL-CIO; GREGORY PASSMORE; RONALD G DUNCAN; TIMOTHY THURMANN; SAMUEL J FRANK; ALEXANDER BRADLEY; MICHELE L BOSWELL; JOHN A TAYLOR; TERRENCE SANDIDGE; KUNIYUKI KASHIUAGI; GWENAIDA COLE; LELA SHIPMAN; SHARON K HARRIS; FABIS HORTON, III; PHILIP BINGMAN,<br><br>Plaintiff,<br><br>vs.<br><br>LAIDLAW TRANSIT SERVICES, INC.; LAIDLAW TRANSIT SERVICES, INC. dba Laidlaw; FIRST TRANSIT INC; FIRST TRANSIT INC dba San Diego Metropolitan Transit System, DOES I THROUGH XXV,<br><br>Defendant. | CASE NO. 05cv1199 - IEG - CAB<br><br>ORDER<br>(1) DESIGNATING CLASS REPRESENTATIVE;<br><br>(2) CERTIFYING THE CLASS PURSUANT TO FED. R. CIV. P. 23(b)(3);<br><br>(3) APPOINTING CLASS COUNSEL |

Plaintiff Amalgamated Transit moves the Court to designate a class representative, certify a class pursuant to Fed. R. Civ. P. 23(b)(3), and appoint class counsel. Defendant Laidlaw Transit filed an opposition and plaintiff replied.

## BACKGROUND

**A.  Factual**

Plaintiff is a labor union and the assignee of approximately 50 meal and rest period violation claims transferred from proposed class members. Plaintiff moves to certify the following class:

> All bus operator employees of Defendant Laidlaw, driving bus routes associated with San Diego Metropolitan Transit System in or around the City of El Cajon, California, at anytime between October 1, 2001 and January 27, 2007, in a unit presently represented for purposes of collective bargaining by Amalgamated Transit Union Local 1309.

(Pl. Motion at 2, Doc. No. 136.)

Defendant contracted with San Diego Metropolitan Transit System ("MTS") to operate fixed route bus services for the City of El Cajon, California.[1] MTS established both the path and schedule for each route. During the class period, defendant employed more than 400 drivers.

Some of the routes included scheduled recovery time.[2] The recovery time varied between five minutes and twenty minutes, but did not necessarily reflect actual recovery time. Drivers had other break opportunities, including "10-6 breaks," bus breakdown breaks, and transition period breaks.[3]

Defendant assigned routes based on a "bid packages." Each bid package contained assignments for various days of the week, times the driver would work, and routes the driver would drive. Drivers bid on the packages based on seniority. As part of the bidding process, drivers signed waivers in which they agreed to work "on-duty" meal periods. This meant drivers agreed to forgo formal meal breaks in exchange for compensation. The parties dispute whether the waiver was voluntarily.

Twelve drivers filed declarations in support of the instant motion, alleging they worked at least 5 hours per day, including at least 3.5 consecutive hours per day. ( Frank Dcl. ¶6.; Pillow Dcl. ¶ 6; Duncan Dcl. ¶ 7.) Defendant allegedly did not offer 30 minute meal periods after drivers worked 5 consecutive hours. Defendant also allegedly did not offer 10 minute rest periods after drivers worked 3.5 consecutive hours. Defendant allegedly did not compensate drivers for the missed breaks.

**B.    Procedural**

Defendant removed this action from California state court on June 9, 2005. The first claim in

---

[1] "Fixed route" transportation describes transit services provided on routes with a set schedule, i.e., a regular municipal or city bus routes. In most fixed route services, a transit agency establishes the bus route and schedule and private contractors operate the service.

[2] "Recovery time" describes extra time built into the schedule to accommodate unforeseeable delays. Defendant notes an example where a bus was scheduled to arrive at a stop at 8:15 a.m. and not scheduled to depart until 8:38 a.m. The recovery time would be 23 minutes.

[3] The term "10-6 break" refers to the code number drivers used to request non-scheduled breaks. The frequency drivers used the break is unclear from the record.

plaintiff's complaint alleges defendant violated various provisions of the California Labor Code and Wage Order 9 by failing to provide compliant meal or rest periods to its drivers.[4] (Compl. ¶¶ 16-33.) The second claim alleges a violation of California's Unfair Competition Law ("UCL"), codified at Business and Professions Code section 17200, et seq., based on the same conduct. (Compl. ¶¶ 34-36.) The complaint seeks unpaid wages, penalties pursuant to the Labor Code § 558 and Wage Order 9, penalties pursuant to Labor Code § 203 arising from the nonpayment of full wages upon termination, and restitution pursuant to the UCL claim.

Plaintiff filed the instant motion requesting the Court to certify the class, appoint plaintiff class representative, and appoint class counsel. In support of its motion, plaintiff submitted 12 driver declarations, a declaration of union representative Steve Alcove, and the declaration of plaintiff's counsel. Defendant filed an opposition, evidentiary objections, three declarations, and two notice of lodgements of exhibits. Plaintiff filed a reply and the Court heard oral argument on January 12, 2009.

## LEGAL STANDARD

**A.     Class Certification**

Rule 23 of the Federal Rules of Civil Procedure governs the certification of a class in federal court. As a threshold matter, the class must meet all four requirements of Rule 23(a). These four requirements are often referred to as numerosity, commonality, typicality, and adequacy. Hunt v. Check Recovery Sys., Inc., 241 F.R.D. 505 (N.D. Cal. 2007). First, the class must be so numerous that joinder of all members individually is "impracticable." See Fed. R. Civ. P. 23(a)(1). Second, there must be questions of law or fact common to the class. Id. (a)(2). Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class. Id. (a)(3). Fourth, the person representing the class must be able to protect fairly and adequately the interests of all members of the class. Id. (a)(4).

If plaintiff satisfies the Rule 23(a) prerequisites, the court then determines whether to certify the class under one of the three subsections of Rule 23(b). In this case, plaintiff relies upon Rule 23(b)(3), which requires plaintiffs establish: (1) questions of law or fact common to the class

---

[4] Wage Order 9-2001 is codified at 8 Cal. Code of Reg. §11090 and will be referred to and cited herein as "Wage Order 9."

predominate and (2) a class action is superior to other methods available for adjudicating the controversy at issue. See Fed. R. Civ. P. 23(b)(3).

When conducting a Rule 23 inquiry, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974). "At this early stage of the litigation, the Court must only determine if the plaintiffs have proffered enough evidence to meet the requirements of FRCP 23, not weigh competing evidence." Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 605 (C.D. Cal. 2005) (citation omitted). The court exercises broad discretion in granting or denying a motion for class certification. See Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003); Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1175 (9th Cir. 2007) ("The district court's decision to certify this class is subject to very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion.") (citation omitted).

**B.     Applicable California Law**

Pursuant to the California Labor Code and Industrial Welfare Commission Wage Orders Nos. 9-2000 and 9-2001 ("Wage Order 9"), proposed class members are entitled to receive daily meal periods and rest periods, or compensation in lieu thereof. Failure to provide meal and/or rest periods subjects the offending employer to penalties as set forth in Labor Code § 558 and Section 20 of IWC Wage Order No. 9. A failure to pay an employee full compensation due at the time of the termination of the employee, entitles the employee who has been shorted his/her full wages at termination to penalties described in Labor Code § 203.

**DISCUSSION**

Defendant argues plaintiff fails to present sufficient evidence to support class certification. Defendant argues plaintiff cannot meet the Rule 23(a) requirements or the Rule 23(b)(3) requirements.

**I.     Motion to Certify the Class**

**A.     Sufficiency of the Evidence**

Defendant makes 103 evidentiary objections to the 12 driver declarations plaintiff submitted in support of its motion. Defendant claims General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982), requires plaintiff provide admissible evidence in support of class certification.

Falcon requires that plaintiff make a "specific presentation identifying the questions of law or fact that were common to the claims of respondent and members of the class he sought to represent." 457 U.S. at 156. However, Falcon does not limit the "presentation" to admissible evidence. Id. Unlike evidence presented at the summary judgment stage, evidence presented in support of class certification need not be admissible at trial. Wiegele v. Fedex Ground Package System, Inc., 2008 WL 410691 (S.D. Cal. Feb. 12, 2008). To the extent defendant objects on grounds suitable for review at this stage, these objections are moot because they did not affect the Court's decision or are overruled.

**B.     Rule 23(a) Requirements**

*1.     Numerosity*

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendant admits the proposed class is compromised of over 400 drivers. Joinder of 400 drivers would be impracticable, satisfying the numerosity requirement.

*2.     Commonality*

Commonality requires plaintiff show there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is construed "permissively"; all questions of law need not be common, but rather "the existence of shared legal issues with divergent factual predicates is sufficient." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Defendant does not dispute the class shares the common question whether Laidlaw systematically denied bus driver employees meal and/or rest periods without compensation.

*3.     Typicality*

i.     Parties' Arguments

Plaintiff contends it is the proper class representative because it is assignee of a number of employee injuries and claims, citing Sprint Communications Company v. APCC Services Inc., 128 S. Ct. 2531 (2008) and Cordes & Company Financial Services, Inc. v. A.G. Edwards & Sons, Inc. 502 F. 3d 91, 101-102 (2d Cir. 2007). Further, statutory penalties are incidental to wage recovery. Road Sprinkler Fitters Local Union No. 669 v. G & G Sprinklers, Inc., 102 Cal. App. 4th 765 (2002).

Defendant argues plaintiff is not a class member and has not suffered injuries typical of the class, distinguishing Sprint Communications and Cordes & Company. Defendant also believes

plaintiff is subject to unique defenses, citing Koenig v. Benson, 117 F.R.D. 330, 336 (E.D.N.Y. 1987). Specifically, plaintiff purportedly cannot recover under Cal. Labor Code §558 because the right to recover statutory penalties is unassignable. Esposti v. Rivers Bros., Inc., 207 Cal. 570, 573 (1923). Additionally, the assignments may not have conveyed the right to pursue UCL restitution claims on behalf of non-assigning class members, an issue currently before the California Supreme Court in Amalgamated Transit Union et al. v. Superior Court, Case S151615.

ii.     Analysis

An assignee may act as a class representative. Sprint Communications held assignees have Article III standing to bring claims for injuries initially suffered by third parties, but did not address the issue of assignees as class representatives. 128 S. Ct. 2531. However, the Second Circuit found assignees may be class representatives because they "stood in the [assignor's] shoes," possessed the same interest as other class members, and asserted a claim for the same injury suffered by the class. Cordes & Company, 502 F.3d 101. The assignees were "assimilated class members" because they did not destroy the efficiency or economy of the class action. Id. at 102. The Second Circuit's reasoning is persuasive because allowing assignees to act as class representatives does not undermine the purpose of class action litigation and has no impact on the economy or efficiency of the suit. Therefore, the Court finds an assignee may act as a Rule 23 class representative.

Plaintiff's purported inability to pursue the section 558 claim does not make it atypical. A class representatives' claims need not be substantially identical to other class members' claims. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members." Id. Section 558 provides:

> (a) Any employer . . . who violates . . . any provision regulating hours and days of work . . . shall be subject to a civil penalty as follows:
> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
> (2) For each subsequent violation, one hundred dollars ($100)
> . . .
> (c) The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

Cal. Labor Code § 558. Recovery under section 558 requires plaintiff prove defendant violated the

statutory provisions relating to rest and meal breaks. This would require proof of the same facts underlying plaintiff's other claims; therefore, plaintiff will adequately represent the claims of other class members even if it cannot recover under section 558.

Koenig is distinguishable. In that case, the court declined to appoint a class representative because he was subject to unique defenses that required individual factual inquiry. Koening, 117 F.R.D. at 336. The court reasoned this factual inquiry would divert attention away from issues common to the class. Id. In this case, the "unique defenses" are purely legal, would not require independent factual inquiry, and would not divert attention away from the issues.

Further, plaintiff's ability to pursue UCL restitution claims does not bar certification. California Business and Professions Code § 17203 allows a party to pursue a representative claim "if the claimant meets the standing requires of Section 17204 and complies with Section 382 of the Code of Civil Procedure." Section 17204 grants standing to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §17204. Section 382 states, "when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." Cal. Code Civ. P. §382. Regarding the §17204 requirement, Sprint Communications established an assignee suffers actual injury by virtue of assignment for Article III standing purposes. Similarly, for the purposes of §17204 standing, this Court finds an assignee has suffered injury in fact by virtue of the assignment. Plaintiff also appears to satisfy the § 382 requirements because, in the present case, the parties are numerous and it would be impractical to bring 400 drivers before the court. This weighs in favor of certification.

*4.     Adequacy*

i.      Parties' Argument

Plaintiff asserts it will fairly and adequately protect the interests of the class because it has no conflicting interest and suffered the same injury as class members. Further, plaintiff notes its attorneys have extensive class action and employment experience.

Defendant argues the Union's fiduciary duty to its members creates a conflict with the rest of the class, citing Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971). Defendant concludes plaintiff's duty of loyalty to currently represented employees requires it to

1  sacrifice the interests of non-represented class members.

2  Plaintiff disputes defendant's reliance on <u>Allied Chemical</u> and notes defendant does not
3  explain how the Union will have to sacrifice the interests of non-Union class members.

4  ii.    Analysis

5  Adequacy is satisfied if the proposed class representative has no conflicting interest with the
6  proposed class and is represented by qualified and competent counsel. <u>Dukes v. Wal-Mart, Inc.</u>, 509
7  F.3d 1168, 1185 (9th Cir. 2007).  Because defendant does not dispute the qualifications of plaintiff's
8  attorneys, the only issue is whether plaintiff has a conflict of interest with non-union class members.
9  In this case, plaintiff's representation of its members in unrelated collective bargaining does not
10 create a conflict of interest with the non-union class members.  There appears to be no material
11 distinction between union and non-union class members and, therefore, no conflict of interest.
12 Accordingly, the Court finds plaintiff will be an adequate representative.

13 **C.    Rule 23(b)(3) Requirements**

14 *1.    Predominance of Common Questions*

15 i.    Parties' Argument

16 Plaintiff argues two common questions predominate: whether class members were entitled to
17 a meal break and whether Laidlaw systematically failed to provide those breaks or compensation,
18 citing <u>Wang v. Chinese Daily News, Inc.</u>, 231 F.R.D. 602, 612-613 (C.D. Cal. 2005) and <u>Morton v.
19 Valley Farm Transp., Inc.</u>, 2007 WL 1113999 (N.D. Cal. April 13, 2007).  Plaintiff claims defendant's
20 bus schedules are evidence of a policy or practice of denying breaks.  According to plaintiff, any
21 individual questions regarding missed breaks are issues of damages, not liability.  Finally, plaintiff
22 asserts drivers signed the meal-break waivers under duress.

23 Defendant asserts plaintiff's rest period claims require a determination of various
24 individualized issues: (1) the number of hours each driver worked; (2) the nature of the driver's
25 employment; (3) the availability of scheduled recovery time; and (4) the causal connection between
26 defendant's actions and the alleged deprivation.  Defendant mentions plaintiff's failure to submit the
27 bus schedules, notes the existence of recovery time, and questions the schedules' evidentiary value.
28 Further, defendant submits a memorandum – defendant's exhibit 2 – informing employees of their

duty to take rest breaks. Defendant claims this is evidence of a compliant rest break policy.

Similarly, defendant argues plaintiff's meal period claims require individualized inquiry. The only issue unique to the meal break claim involves the meal break waiver forms. Defendant argues duress-based challenges to the validity of the waivers would require individual testimony to determine the context in which each driver signed the agreement.

Plaintiff argues the rest and meal period claims are best resolved on a class basis. Plaintiff contends the existence of scheduled recovery time does not exculpate defendant from liability for its common policy and practice of break deprivation. Plaintiff disputes whether 10-6 breaks and other rest opportunities constitute "rest breaks."

ii.     Analysis

The principal factor in determining whether common issues of fact predominate is whether the uniform classification eases the burden of the individual inquiry. Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637 (S.D. Cal. 2007). California law requires plaintiff show defendant forced class members to miss rest or meal breaks. See Salazar v. Avis Budget Group, Inc., 251 F.R.D. 529, 534 (S.D. Cal. 2008). The employer need only provide *opportunity* to take breaks. Id.

In Wang, the district court found predominance when the defendant-company implemented a uniform policy of classifying newspaper reporters as "exempt" from the minimum wage and maximum hour laws. 231 F.R.D. at 612. The court discussed predominance "in case a reviewing court disagrees . . . that the class should be certified pursuant to Rule 23(b)(2)." Id. However, the court found the uniform policy predominated over the issue of individual damages.

In Morton, the court certified a class of milk drivers that defendant allegedly deprived of meal breaks. 2007 WL 1113999. The court found the common question "whether defendant dictated uniform practices regarding meals and breaks" predominated over issues of individual damage determinations. Id. at *5, n. 4.

The common issues raised by the rest break claim in the present case predominate over individual issues. The common issue is whether defendant scheduled bus routes in a manner that deprived workers of the opportunity to take rest breaks. This issue is subject to common proof,

1 including evidence of schedules, a sample of the actual route times, and driver testimony.[5] This issue
2 predominates over individualized inquiries required because "determinations about hours worked are
3 routine in class actions involving alleged denials of overtime pay and meal/rest periods." Morton, WL
4 1113999 at *5. Further, the memorandum submitted by Laidlaw does not change this result. (Def. Ex.
5 2.) The memorandum does address rest breaks, but it does not negate the alleged practice of break
6 deprivation.

7 The common issues raised by the meal break claim predominate. The existence and validity
8 of purported meal break waivers is irrelevant. The complaint alleges defendant failed to provide meal
9 breaks *or* compensation for such breaks. Regardless of the waivers' validity, defendant was obligated
10 to provide either a break or compensation; actions defendant allegedly failed to take. Therefore, the
11 issue of the waivers' validity does not change the Court's analysis.

12 ***2.   Superiority of Class Action***

13 i.   Parties' Argument

14 Plaintiff lists factors it believes support finding class adjudication is superior. First, each class
15 member's interest is insufficient to support separate actions. Second, plaintiff has litigated this case
16 since its inception and no conflicting individual actions exist. Third, all claims arise in this district,
17 making it desirable to concentrate the actions in this forum. Fourth, class management is a non-issue
18 because the class is small enough to facilitate administration. Fifth, class treatment will promote
19 judicial economy and protect the rights of aggrieved class members. Finally, the Union's involvement
20 will ameliorate difficulties in class management.

21 Defendant argues plaintiff has not offered a trial plan or common proof, citing Maddock v. KB
22 Homes, 248 F.R.D. 229 (C.D. Cal. 2007). Defendant further argues the Court must evaluate drivers
23 employed in different capacities, driving different routes, and entitled to different breaks.

24 Plaintiff replies class adjudication may be the only method of resolving these disputes given
25 the limited damages for each aggrieved class member. Further, plaintiff notes Maddock only requires
26 a showing of "plausible class-wide methods of proof [are] available." 248 F.R.D. at 240.

---

28 [5] MTS required defendant keep "a daily office/dispatch log . . . of vehicle breakdowns, roadcalls," which is evidence of actual route times. (DeNardo Decl. at 50.) Further, 12 driver declarations state the straight routes they drove never had scheduled breaks.

### ii. Analysis

Since all of the claims involve a relatively insubstantial amount of money, a class action is the superior method of adjudication. Absent class action, the class members would probably not pursue their individual claims. Additionally, plaintiff has made a showing of plausible class-wide methods of proof in the form of schedules, driver logs, and testimony.

## II. Appointing Class Counsel

Under Federal Rule of Civil Procedure 23(g), the Court must consider the four factors to determine whether to appoint class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

Plaintiff proposes the Court certify its present counsel, Neyhart, Anderson, Flynn & Grosboll as class counsel. Plaintiffs' counsel are experienced labor and class action attorneys, with over 40 years of collective experience. (De Nardo Decl. ¶4.) Plaintiff's counsel have spent over three years litigating the present action and are familiar with the claims of the class. As a result, the court GRANTS plaintiffs' motion to appoint Neyhart, Anderson, Flynn & Grosboll as class counsel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion, designates plaintiff as class representative, certifies the class, and appoints Neyhart, Anderson, Flynn & Grosboll class counsel. Class counsel is ordered to provide the Court with a proposed class notice within 15 days of the filing of this order.

**IT IS SO ORDERED.**

**DATED: February 2, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**