**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 1309, AFL-CIO; GREGORY PASSMORE; RONALD G. DUNCAN; TIMOTHY THURMANN; SAMUEL J. FRANK; ALEXANDER BRADLEY; MICHELE L. BOSWELL; JOHN A. TAYLOR; TERRENCE SANDIDGE; KUNIYUKI KASHIUAGI; GWENAIDA COLE; LELA SHIPMAN; SHARON K. HARRIS; FABIS HORTON, III; PHILIP BINGMAN,<br><br>                                   Plaintiffs,<br>    vs.<br><br>LAIDLAW TRANSIT SERVICES, INC.; LAIDLAW TRANSIT SERVICES, INC., *d/b/a Laidlaw*; LAIDLAW TRANSIT SERVICES, INC. *d/b/a San Diego Metropolitan Transit System*; FIRST TRANSIT INC.; FIRST TRANSIT INC. *d/b/a San Diego Metropolitan Transit System*; DOES 1 THROUGH XXV,<br><br>                                   Defendants. | CASE NO. 05cv1199 - IEG - CAB<br><br>Order Granting in Part and Denying in Part the Parties' Cross-Motions for Summary Judgment<br><br>[Doc. No. 159, 160.] |

In this wage-and-hour class action, the parties submit cross-motions for summary judgment. Plaintiffs seek judgment regarding: (1) the unfair competition claims; (2) the availability of waiting time penalties; and (3) the availability of civil penalties under California law.[1] Defendant Laidlaw

---

[1] "Waiting time penalties" are penalties imposed if the employer fails to pay wages due at termination. They accrue every payroll period the employee waits for payment.

Transit filed a cross-motion for summary judgment. Having considered the parties' submissions, and for the reasons set forth below, the Court enters the following memorandum and order.

## BACKGROUND

Plaintiffs Ronald Duncan, Michele Boswell, and John Taylor (collectively "Plaintiffs") represent the following class:

> All bus operator employees of Defendant Laidlaw, driving bus routes associated with San Diego Metropolitan Transit System in or around the City of El Cajon, California, at anytime between October 1, 2001 and January 27, 2007, in a unit presently represented for purposes of collective bargaining by Amalgamated Transit Union Local 1309.

Laidlaw contracted with San Diego Metropolitan Transit System ("MTS") to operate fixed route bus services for the City of El Cajon, California.[2] MTS established both the path and schedule for each route. Every three to six months, MTS created a new set of bus route schedules for the El Cajon facility. The schedules determined the number of routes Laidlaw serviced, the number of buses operated on each route, and the number of drivers employed. During the class period, Laidlaw employed more than 400 drivers.

Laidlaw used the MTS schedules to create driver shifts, which it incorporated into driver bid packages. Each bid package included specific days, times, and routes the driver would work. The bid packages included either "split shifts" or "straight shifts." A driver working a split shift worked one paid shift, followed by an unpaid period, followed by a second paid shift. A driver working a straight shift drove continuously without breaks. Drivers bid on the packages based on seniority. Most routes included scheduled "recovery time," which is time built into the schedule to accommodate delays such as passengers with wheelchairs.[3] Scheduled recovery time varied between five minutes and twenty minutes, but did not necessarily reflect actual recovery time on a given day.

As part of the bidding process, drivers signed "on-duty" meal period agreements in which they agreed to take their meals on the job in exchange for compensation. Laidlaw presented the agreements minutes before bidding commenced.

---

[2] "Fixed route" transportation describes transit services provided on routes with a set schedule, i.e., a regular municipal or city bus routes.

[3] For example, if a bus was scheduled to arrive at a stop at 8:15 a.m. and depart at 8:38 a.m., the recovery time would be 23 minutes.

The extent of Laidlaw's rest period policy is unclear. Laidlaw's written policy, issued in September 2004, described the right to rest periods, explained drivers were responsible for taking their breaks, and requested drivers contact management if rest periods proved unavailable. However, the parties dispute whether Laidlaw made rest periods available in practice. Plaintiffs cite a letter in which a Laidlaw employee discusses the rest period policy:

> Project Manager stated that he spoke with Operations Manager yesterday and believes that he can put mandated break periods in almost every schedule & verified that this will be done within two weeks. Project Manager stated that he was aware that he needed to start paying the penalty for any routes that did not have breaks as soon as administratively possible.

(Lunch Decl., Ex. E., p. LL 753.) Laidlaw asserts drivers had a variety of opportunities to take breaks: during recovery time, calling in a "10-6 break," during bus breakdowns, and during transition periods.[4] Plaintiffs dispute the actual availability of these types of breaks.

**B.     Procedural Background**

Laidlaw removed this action from California state court on June 9, 2005. Plaintiffs' complaint alleges Laidlaw violated various provisions of the California Labor Code and Wage Order 9 by failing to provide compliant meal or rest periods to its drivers.[5] (Compl. ¶¶ 16-33.) Further, Plaintiffs allege violations of California's Unfair Competition Law. (Compl. ¶¶ 34-36.) Plaintiffs seek unpaid wages, penalties pursuant to the Labor Code § 558 and Wage Order 9, penalties pursuant to Labor Code § 203, and restitution pursuant to the Unfair Competition Law.

On February 2, 2009, the Court certified the class, appointed a class representative, and appointed class counsel. On July 29, 2009, upon joint motion from the parties, the Court substituted named plaintiffs Ronald Duncan, Michele Boswell, and John Taylor in place of Amalgamated Transit Union Local 1309 as class representatives in the action.

Presently, Plaintiffs seek judgment as a matter of law regarding: (1) the unfair competition claims for unpaid meal periods and rest periods; (2) the availability of waiting time penalties; and (3) the class's entitlement to civil penalties under California law. Laidlaw seeks partial summary

---

[4] The term "10-6 break" refers to the code number drivers used to request non-scheduled breaks. The frequency drivers used the break is unclear from the record.

[5] Wage Order 9-2001 ("Wage Order 9") is codified at Cal. Code. Regs. tit. 8, § 11090.

1 judgment on six issues that roughly correspond to Plaintiffs' motion: (1) whether Laidlaw was
2 responsible for the time points and route requirements reflected in the MTS bus schedules; (2) whether
3 Laidlaw's rest period system complied with California law; (3) whether Laidlaw's meal period system
4 complied with California law; (4) whether Plaintiff is entitled to wages under Labor Code section
5 226.7; (5) whether Plaintiff is entitled to wages under Labor Code section 558(a)(2); and (6) whether
6 Laidlaw is liable for waiting time penalties.

## LEGAL STANDARD

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Summary judgment may be granted where the moving party shows "an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. Id. at 322. However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof. Id. at 323. To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir.2000) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 323). The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. Nissan, 210 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1180 (9th Cir. 2002). The court is not required "to scour the record in

1  search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir.1996), but
2  rather "may limit its review to the documents submitted for purposes of summary judgment and those
3  parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237
4  F.3d 1026, 1030 (9th Cir. 2001).

**DISCUSSION**

**I.     MTS & Liability**

Laidlaw believes it is not liable for any class-wide violations of California's rest period requirements because MTS designed the bus schedules. Plaintiffs argue Laidlaw expressly assumed liability for meal and rest period violations. In their papers, Plaintiffs include a contract between Laidlaw and San Diego MTS, which states, "CONTRACTOR shall be responsible for complying with any federal, state, or local laws regarding employee lunch periods or required breaks." (Lunch Decl., Exhibit A at A-5.) The contract identifies Laidlaw as the "contractor." Id.

The contract's above-quoted language has only one reasonable interpretation: Laidlaw assumed sole responsibility for complying with meal and rest period requirements. Given this uncontroverted evidence, the Court rejects Laidlaw's argument.

**II.    Meal Break Claims**

i.     Legal Standard

In the transportation industry, an employee working more than five hours in a workday must be given at least a 30-minute meal period. Cal. Code. Regs. tit. 8, § 11090. An employer who requires an employee to work during this mandatory meal period must pay the employee an additional hour of pay. Cal. Labor Code § 226.7(b). However, the Industrial Welfare Commission ("IWC") allows parties to contract around the meal period requirement in certain circumstances. Parties may treat the meal break as a compensated "on duty" meal period if they satisfy three conditions: (1) "the nature of the work prevents an employee from being relieved of all duty"; (2) the parties agree in writing to treat the period as "an on-the-job paid meal period"; and (3) the written agreement states, "the employee may, in writing, revoke the agreement at any time." Cal. Code. Regs. tit. 8, § 11090, subsec. 11(C). An "on-duty meal period" agreement is not a waiver of a meal period, but instead represents a type of meal period under California law. McFarland v. Guardsmark, LLC, 538 F. Supp.

1  2d 1209 (N.D. Cal. 2008).

2  ii.    Parties' Arguments

3  Plaintiffs believe Laidlaw failed to provide meal periods, in violation of California law. Specifically, Plaintiffs assert Laidlaw and class members entered into on-duty meal period agreements that are invalid for four reasons. First, Plaintiffs believe the nature of the work did not preclude off-duty breaks. Plaintiffs assert two relief driver programs could have provided breaks: (1) a relief driver operating a second bus during the meal period or (2) a relief driver who met the bus mid-route. Second, Plaintiffs assert the drivers lacked the opportunity to eat, thereby invalidating the agreements. Third, Plaintiffs assert the meal break agreements are contracts of adhesion. Fourth, Plaintiffs assert the meal break agreements are unconscionable, both procedurally and substantively.

Laidlaw argues "split-shift" drivers received off-duty meal breaks. As for straight shift drivers, Laidlaw believes the signed meal-break agreements are valid: the nature of the work precluded off-duty meal periods and drivers had the option to sign the agreement or work split shifts. Laidlaw contends it paid class members for all on-duty meal periods.

iii.    Analysis

It is undisputed the drivers who worked straight shifts did not receive off-duty meal periods. The sole issue is the validity of the meal break agreements. As previously noted, Laidlaw must prove three elements to establish validity: (1) the nature of the work must prevent off-duty meal breaks; (2) a valid written agreement must exist; and (3) the agreement must state the employee may, in writing, revoke the agreement at anytime. The Court addresses these factors in turn.

First, the nature of the work prevented off-duty meal breaks. The general manager of Laidlaw's El Cajon facility, Bryant Worley, avers the MTS-created routes prevented off-duty meal periods. (Worley Decl. ¶¶ 2-5, 9.) Worley asserts the MTS routes did not incorporate a 30-minute meal period, therefore, it was not possible for a driver working a straight shift to have an off-duty meal period. Id. Plaintiffs provide no evidence to refute this claim. Further, the proposed relief-driver programs are impractical. First, the two-bus system would be a logistical disaster – to continue along a fixed route, a passenger would have to de-board the original bus, board the relief bus, de-board the relief bus, and re-board the original bus in the span of thirty minutes. Second, the mid-route relief

driver program is fatally flawed. Variables such as traffic, parking, promptness, cost, and passenger safety counsel against this program. Plaintiffs have not shown Laidlaw could have relieved drivers, therefore, a reasonable jury could only conclude the work prevented off-duty meal breaks.

Second, the issue is whether the written agreement is invalid as unconscionable. In California, "unconscionability has both a 'procedural' and a 'substantive' element." A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 487 (1982). Procedural unconscionability focuses on "oppression" and "surprise." Id. The "oppression" element arises from inequality of bargaining power that results in an absence of choice. Id. The "surprise" element "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form . . . ." Id. at 486. Generally, an agreement is procedurally unconscionable if it is a contract of adhesion. Armendariz v. Foundation Health Psychcare services, Inc., 24 Cal. 4th 83, 113 (2000). In the employment context, a contract that is drafted by the employer and foisted upon the employee on a "take-it-or-leave-it" basis without an opportunity for negotiation is a contract of adhesion. Id. at 115. An agreement is substantively unconscionable if it is "unfairly one-sided" or generates one-sided results. Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003).

The meal break agreements were procedurally unconscionable. Laidlaw foisted the agreements on drivers minutes before bidding began. Laidlaw presented the agreement as a prerequisite to bidding. Drivers experienced temporal pressure to sign the agreements on a "take-it-or-leave-it" basis. The existence of split shifts is a red herring because Laidlaw split only 20% of the shifts; therefore, split shifts were unavailable to less senior drivers who bid late in the process. A reasonable jury could only find the agreements were procedurally unconscionable.

However, the agreements were not substantively unconscionable. This type of agreement is specifically authorized by the IWC. Although the conditions under which employees signed the agreement were inequitable, the IWC has specifically endorsed the concept of on-duty meal agreements. Therefore, the Court finds the agreements are not substantively unconscionable.

Third, it is unclear whether the agreements systematically failed to "state that the employee may, in writing, revoke the agreement at any time." Cal. Code. Regs. tit. 8, § 11090. Laidlaw submits a sample on-duty meal period agreement, signed by Crystal Clark on April 25, 2005. The last line of

1  this agreement states, "The Employee may, in writing, revoke this Agreement at any time." (Def.
2  Notice of Lodgement, Ex. 6.) However, Plaintiffs submit eight on-duty meal break agreements that
3  omit the revocability line. (Lunch Decl. Ex. O.) Based on this conflicting evidence, it is unclear
4  whether the meal break agreements were valid on a class-wide basis. The Court cannot resolve this
5  factual discrepancy without further development of the record; therefore, a genuine issue of material
6  fact precludes summary judgment. Accordingly, the Court DENIES the parties' motions regarding
7  the meal break claims.

**III.    Rest Period Claims**

i.    Legal Standard

Under California law, "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Cal. Labor Code §226.7(a). Under the IWC's Wage Order 9, every employer must permit employee rest periods "based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours" of work. Cal. Code Regs. tit. 8, § 11090, subsec. 12(A) (2009). Federal courts recognize these provisions only require an employer make rest periods available to employees, not ensure the breaks were actually taken. See, e.g., White v. Starbucks, 497 F. Supp. 2d 1080, 1085-87 (N.D. Cal. 2007). "If an employer fails to provide a meal or rest period . . . [it] shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period was not provided." Cal. Labor Code §226.7(b).

ii.    Parties' Arguments

Laidlaw argues its rest period system complied with California law. First, Laidlaw contends its written rest period policy informed employees of their rest period rights. Second, Laidlaw claims it systematically allowed drivers to take rest periods during recovery time. Third, Laidlaw claims any driver who missed a break could call dispatch using a 10-13 or 10-6 code and request a rest break.

Plaintiffs assert Laidlaw's rest period policy, disseminated in September 2004, did not change Laidlaw's practice of denying breaks. Plaintiffs contend "recovery time" was primarily dedicated to accommodate transport of wheelchair users, and was only available for breaks if the bus was on-time. (Expert Decl. of Einstein, ¶ 12.) Plaintiffs believe Laidlaw prohibited drivers from using the 10-13

and 10-6 codes to supplement missed rest periods.

Additionally, Plaintiffs believe Laidlaw affirmatively denied rest periods. According to Plaintiffs, operations manager Ruben Cannon told two drivers recovery time could not be used as break time. (Lunch Decl., Ex. M (Bingman) 73:7-15; 77:23-78:2; Lunch Decl. Ex U (Horton) 79:4-6.) Further, Plaintiffs claim a Laidlaw internal document, entitled "California Labor Code Compliance Checklist – El Cajon (9070)," demonstrates Laidlaw's managers knew certain routes lacked rest periods. (Lunch Decl., Ex. E., p. LL 753.) The document reads, "Project Manager stated that he was aware that he needed to start paying the penalty for any routes that did not have breaks as soon as administratively possible." Id. Plaintiffs contend this admission, coupled with Laidlaw's failure to pay the penalty, proves Laidlaw's non-compliance with California law.

iii.   Analysis

Based on Laidlaw's evidence, a jury could reasonably conclude Laidlaw provided opportunities to take rest breaks. Laidlaw's 2004 dissemination of its written rest period policy advising employees of their right to rest periods may lead a jury to conclude Laidlaw had properly placed the onus on drivers to take the breaks. (Notice of Lodgement, Ex. 4, Worley Decl., ¶¶ 5-6.) Further, a jury could conclude the recovery built into routes provided the theoretical opportunity for a break. Id. Finally, based on the representations of Laidlaw's witnesses, a jury could reasonably believe drivers could use the 10-13 code or the 10-6 code to supplement missed break time.

Alternatively, based on Plaintiffs' evidence, a jury could reasonably conclude Laidlaw did not provide sufficient rest break opportunities. First, a jury could conclude drivers did not know the rest break policy prior to September 2004. Second, the jury could deduce, from the statements of Ruben Cannon, that recovery time did not equal a rest period. Third, a jury may conclude the 10-6 codes or 10-13 codes could not be used to supplement missed rest breaks based on driver testimony and the frequency with which these breaks were used. Finally, the Laidlaw memorandum indicates it may have known routes failed to provide appropriate rest periods. Because genuine issues of material fact exist, the Court DENIES both parties' motions.

//

//

**IV.    Labor Code § 203 Waiting Time Penalties**

i.      Legal Standard

Pursuant to California Labor Code section 203, where an employer willfully fails to pay wages at the time of discharge, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203.

A failure to pay wages is willful "when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203." Cal. Code Regs., tit. 8, §13520. A "good faith dispute" occurs "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist." Id. "So long as no other evidence suggests the employer acted in bad faith, presentation of a good faith defense, based in law or fact, will negate a finding of willfulness." Amaral v. Cintas Corp., No. 2, 163 Cal. App. 4th 1157, 1204 (2008).

ii.     Parties' Arguments

Laidlaw argues it never "willfully" failed to pay any wages. Laidlaw asserts there is a good faith dispute whether any wages are due, precluding the imposition of waiting time penalties, citing Barnhill v. Robert Saunders & Co, 125 Cal. App. 3d 1 (1981) and Amaral v. Cintas Corp., 163 Cal. App. 4th 1157 (2008). Laidlaw asserts it was confused whether the disputed wages were a penalty or a wage, an issue the California Supreme Court did not resolve until 2007. Murphy v. Kenneth Cole Productions, 40 Cal. 4th 1094 (2007). Third, Laidlaw argues any claim arising before April 12, 2002 is barred by section 203's three-year statute of limitations.

Plaintiffs assert Laidlaw terminated all class members without compensating class members for missed rest periods. Plaintiffs note the defendants in Barnhill and Amaral disputed whether payment was due, whereas here Laidlaw disputes whether the amount due is a penalty or a wage.

iii.    Analysis

In Barnhill, the court considered whether an employer's failure to pay wages is "willful" if its

1  legal duty to pay them is unclear at the time of the violation. Barnhill, 125 Cal. App. 3d at 4. When
2  the employee in Barnhill was discharged, she owed her employer the balance on a promissory note.
3  Id. The employer set off the note's balance against wages due, prompting the employee to sue for
4  wages due and section 203 waiting time penalties. Id. Although the set off was later found invalid,
5  the state law was unclear at the time of discharge; therefore, the failure to pay was not willful. Id.

6       In Amaral, the court found a good faith dispute arose when the defendant raised numerous
7  legitimate defenses to a living wage ordinance. 163 Cal. App. 4th at 1202. The Court found, although
8  it rejected the defenses, the "defenses were not unreasonable or frivolous." Id. Therefore, the court
9  concluded, the good faith dispute barred waiting time penalties.

10       In the instant case, Laidlaw raises reasonable, non-frivolous defenses to Plaintiffs' claims. As
11  to the meal period claims, Laidlaw believes the drivers agreed to on-duty meal periods that are valid
12  under California Law. As to the rest period claims, Laidlaw believes it provided drivers with the
13  opportunity to take breaks. Accordingly, the Court is satisfied that there was a good faith dispute
14  whether Laidlaw owed Plaintiffs any unpaid wages. As such, the Court GRANTS Laidlaw's motion
15  and DENIES Plaintiffs' motion.

16  **V.     Civil Penalties**

17       Plaintiffs' right to civil penalties depends on two issues. First, Plaintiffs must satisfy the
18  threshold requirements of California's Private Attorney Generals Act ("PAGA"), Cal. Labor Code §
19  2699. Second, if PAGA is satisfied, Plaintiffs must demonstrate entitlement to civil penalties under
20  Labor Code § 558 or Wage Order 9.

21  *A.     Threshold PAGA Requirements*

22  i.     Legal Standard

23       Under PAGA, an aggrieved employee may recover for violations of the California Labor
24  Code. See Cal. Lab.Code § 2699(a). However, before the employee can bring a PAGA claim, she
25  must first exhaust her administrative remedies by notifying the Labor and Workforce Development
26  Agency ("LWDA"), and her employer, of the specific provisions violated and the facts to support the
27  allegations. See Cal. Labor Code § 2699.3(a)(1). If the LWDA decides not to investigate the alleged
28  violation, the aggrieved employee may commence a civil action. Cal. Labor Code § 2699.3(a)(2).

1  ii.     Parties' Arguments

2      Plaintiffs argue they have satisfied both PAGA requirements. Specifically, Plaintiffs assert
3  they provided written notice to the LWDA and Laidlaw on February 24, 2005. (Lunch Decl., Ex. H.)
4  Further, Plaintiffs contend the LWDA sent written notice of its intention to forego investigation of the
5  alleged violations. Plaintiffs conclude they complied with PAGA's requirements.

6  iii.    Analysis

7      Plaintiffs satisfied PAGA's threshold pre-filing requirements. Plaintiff provided pre-filing
8  notice to both Laidlaw and the LWDA of its claims. Additionally, the LWDA issued a notice of intent
9  to forego investigation, satisfying the exhaustion requirement. Therefore, the Court finds Plaintiffs
10 have satisfied the PAGA requirements.

11 *B.     Penalties under Labor Code § 558 and Wage Order 9*

12 i.      Legal Standard

13     Through PAGA, Plaintiffs assert claims under California Labor Code § 558. Section 558
14 allows an aggrieved employee to recover "civil penalties for violation of the wage laws, including
15 failure to pay wages." Bradstreet v. Wong, 161 Cal. App. 4th 1440, 1448 (2008). Section 558
16 imposes the following penalties:

> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

Cal. Labor Code § 558. Wage Order 9, section 20, imposes similar penalties:

> (A) In addition to any other civil penalties provided by law, any employer or any other person acting on behalf of the employer who violates, or causes to be violated, the provisions of this order, shall be subject to the civil penalty of:
> (1) Initial Violation -- $50.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages.
> (2) Subsequent Violations -- $100.00 for each underpaid employee for each pay period during which the employee was underpaid in addition to an amount which is sufficient to recover unpaid wages.
> (3) The affected employee shall receive payment of all wages recovered.

Cal. Code. Regs. tit. 8, § 11090, subsection 20. For its present purposes, the Court refers to the $50

penalties as "initial violation penalties" and the $100 penalties as "subsequent violation penalties."

ii.     Parties' Arguments

Plaintiffs argue Laidlaw's alleged failure to compensate employees for missed meal and rest periods triggers the initial violation penalties. Further, Plaintiffs argue Laidlaw is liable for subsequent violation penalties because it knew it was violating California Law. Plaintiffs rely on a Laidlaw internal document that reads:

> Project Manager stated that he spoke with Operations Manager yesterday and believes that he can put mandated break periods in almost every schedule & verified that this will be done within two weeks. Project Manager stated that he was aware that he needed to start paying the penalty for any routes that did not have breaks as soon as administratively possible.

(Lunch Decl., Ex. E., p. LL 753.)

Laidlaw argues Plaintiffs are not entitled to subsequent violation penalties. Laidlaw notes Plaintiffs characterize the first payroll period for each unpaid employee as the "initial violation" and every subsequent payroll period as a "subsequent violation." However, Laidlaw asserts California only imposes the enhanced "subsequent violation penalty" after an employer has been notified its conduct violates the Labor Code, citing Amaral v. Cintas Corp., 163 Cal. App. 4th 1157, 1207 (2008). Because Laidlaw has never been found to have violated Wage Order 9's meal or rest period requirements, it believes it can only incur initial violation penalties.

Plaintiff contends Amaral does not require a judicial determination before imposition of the subsequent violation penalty, merely notice of wrongdoing.

iii.    Analysis

In Amaral, the Court found "[u]ntil the employer has been notified that it is violating a Labor Code provision (whether or not the commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware [of the violation]." 163 Cal. App. 4th at 1209. "However, after the employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished . . . ." Id.

For the purposes of subsequent violation penalties, the issue is not whether Laidlaw willfully violated the Labor Code, but rather whether a court or commissioner had notified it of any violation. The parenthetical language from Amaral supports this conclusion: "whether or not the commissioner

1  or court chooses to impose penalties . . . ." Id. This language indicates the court believed notice
2  would issue from either a commissioner or court. Further, other sections of the Labor Code already
3  punish willful violations; therefore, it would be redundant to conflate willfulness with the "subsequent
4  violation" requirement. Accordingly, the Court GRANTS Laidlaw's motion and finds Laidlaw is not
5  subject to subsequent violation penalties either section 558(a)(2) or Wage Order 9.

6  As for the initial violation penalties, a genuine issue of material fact precludes summary
7  judgment. As discussed above, there are issues of material fact whether Amalgamated improperly
8  deprived employees of meal periods and rest periods without adequate compensation. Therefore, the
9  Court DENIES Plaintiffs' motion.

**VI.   Evidentiary Objections**

Laidlaw makes a series of evidentiary objections. To the extent Laidlaw objects on grounds suitable for review at this stage, these objections are moot because they did not affect the Court's decision or are overruled.

**CONCLUSION**

For the foregoing reasons, the Court:

(1) DENIES Laidlaw's motion regarding Plaintiffs' meal break claims and DENIES Plaintiffs' motion regarding their meal break claims;

(2) DENIES Laidlaw's motion regarding Plaintiffs' rest period claims and DENIES Plaintiffs' motion regarding their rest period claims;

(3) GRANTS Laidlaw's motion with respect to California Labor Code § 203 waiting time penalties and DENIES Plaintiffs' cross-motion on waiting time penalties;

(4) GRANTS Laidlaw's motion regarding the civil penalties and DENIES Plaintiffs' motion for summary judgment regarding the civil penalties.

**IT IS SO ORDERED.**

**DATED:  August 10, 2009**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**