# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 1309, et al.,<br><br>  Plaintiffs,<br><br>vs.<br><br>LAIDLAW TRANSIT SERVICES, INC., et al.,<br><br>  Defendants. | CASE NO. 05-CV-1199 - IEG (CAB)<br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION<br>RE: FIRST TRANSIT<br><br>[Doc. No. 186] |

Currently before the Court is Plaintiffs' Motion for Class Certification with respect to Defendant First Transit, Inc ("First Transit"). [Doc. No. 186]. First Transit filed an opposition, and Plaintiffs replied. [Doc. Nos. 192, 193]. Having considered the parties' arguments, and for the reasons set forth below, the Court **DENIES** the motion for class certification.

## BACKGROUND

**I.     Factual background**

This action concerns Defendants First Transit and Laidlaw Transit Services, Inc.'s ("Laidlaw") operation of fixed route bus services in and around the City of El Cajon, California, from about April 12, 2001. According to Plaintiffs, Defendant First Transit operated the El Cajon bus yard from April 12, 2001 to September 30, 2001, and Defendant Laidlaw operated the El Cajon bus yard from October 1, 2001 to approximately January 27, 2007. When Laidlaw took over the operation of the El Cajon

1  bus yard, it hired First Transit's operators to continue driving the bus routes.[1]

2  Defendants contracted with San Diego Metropolitan Transit System ("MTS") to operate fixed route bus services for the City of El Cajon. MTS allegedly established both the path and schedule for each route. Every three to six months, MTS created a new set of bus route schedules for the El Cajon facility. The schedules determined the number of routes Defendants serviced, the number of buses operated on each route, and the number of drivers employed. During the time that it operated the El Cajon facility, First Transit employed somewhere between 100 and 150 drivers to staff the routes. Laidlaw, for its part, employed more than 400 drivers.

Both First Transit and Laidlaw allegedly used the MTS schedules to create driver shifts, which they incorporated into driver bid packages. Each bid package included specific days, times, and routes the driver would work. The bid packages included either "split shifts" or "straight shifts." A driver working a split shift worked one paid shift, followed by an unpaid period, followed by a second paid shift. A driver working a straight shift drove continuously without breaks. Drivers bid on the packages based on seniority. Most routes included scheduled "recovery time," which is time built into the schedule to accommodate delays. Scheduled recovery time varied between five minutes and twenty minutes, but did not necessarily reflect actual recovery time on any given day.

Plaintiffs allege that none of the drivers were permitted to take a 30 minute meal period after 5 consecutive hours of work, or a 10 minute rest period after 3.5 consecutive hours of work. Rather, as part of the bidding process, drivers signed "on-duty" meal period agreements in which they agreed to take their meals on the job in exchange for compensation. However, Plaintiffs allege that none of the drivers were paid any compensation for the missed meal and rest periods.

## II. Procedural history

Plaintiffs commenced this action on April 12, 2005, by filing a complaint in the Superior Court for the County of San Diego. The action was removed to this Court on June 9, 2005. The complaint

---

[1] First Transit alleges that until approximately October 2007, Laidlaw and First Transit were totally separate companies and were in fact competitors in the transportation industry in California and throughout the United States. (See Scott Decl. ¶ 3 [Doc. No. 192-1].) It was only subsequently, in October 2007, that Laidlaw was acquired by First Transit's parent company. (See id.)

alleges that Defendants violated various provisions of the California Labor Code and Wage Order 9[2] by failing to provide compliant meal and/or rest periods to their drivers. Further, Plaintiffs allege violations of California's Unfair Competition Law ("UCL"). Plaintiffs seek unpaid wages, penalties pursuant to the Labor Code and Wage Order 9, and restitution pursuant to the UCL.

By orders filed November 18, 2005, the Court granted in part and denied in part First Transit's and Laidlaw's motions to strike. [See Doc. Nos. 67, 68]. The Court ordered stricken from the complaint allegations brought under Sections 1194 and 1194.2 of the Labor Code with respect to both Defendants, and under Section 2699 with respect to First Transit only. Defendants subsequently answered, and the case was stayed on several occasions while the issues of applicable statutes of limitation were being considered by the California Supreme Court. [See Doc. Nos. 98, 101, 105, 107].

On March 12, 2008, the Court ordered that any motion for class certification must be filed on or before August 1, 2008. [Doc. No. 130]. On July 21, 2008, the Court continued that date to September 9, 2008. [Doc. No. 135]. On September 9, 2008, Plaintiffs filed their first motion for class certification, which referred only to Defendant Laidlaw. [Doc. No. 136]. On February 2, 2009, the Court certified the class with respect to Defendant Laidlaw, appointed a class representative, and appointed the firm of Neyhart, Anderson, Flynn & Grosboll ("Neyhart Anderson") as class counsel. [Doc. No. 152]. The Court certified as a class:

> All bus operator employees of Defendant Laidlaw, driving bus routes associated with San Diego Metropolitan Transit System in or around the City of El Cajon, California, at anytime between October 1, 2001 and January 27, 2007, in a unit presently represented for purposes of collective bargaining by Amalgamated Transit Union Local 1309.

[Id.] On July 28, 2009, upon joint motion from the parties, the Court substituted named plaintiffs Ronald Duncan, Michele Boswell, and John Taylor in place of Amalgamated Transit Union Local 1309 as class representatives. [Doc. No. 177]. Subsequently, Plaintiffs and Defendant Laidlaw filed cross-motions for summary judgment ("cross-MSJs"). On August 10, 2009, the Court granted in part and denied in part those motions. [Doc. No. 178].

On November 4, 2009, Plaintiffs filed an Ex Parte Application seeking leave to file the instant

---

[2] "Wage Order 9" refers to Wage Order 9-2001, which is codified at Section 11090 of Title 8 of the California Code of Regulations.

motion for supplemental class certification, this time with regard to Defendant First Transit. [Doc. No. 182]. Having concluded that no prejudice would result to First Transit from allowing Plaintiffs to *file* their supplemental motion, the Court granted the Ex Parte Application.

In the instant motion, Plaintiffs seek to either amend the original class definition, or to certify an additional class, so as to cover those employees who worked for Defendant First Transit from April 12, 2001 to September 30, 2001. (Pl. Motion, at 2 [Doc. No. 186].). Thus, if the class definition is amended, it will read as follows:

> All bus operator employees of Defendants Laidlaw or First Transit, driving bus routes associated with San Diego Metropolitan Transit System in or around the City of El Cajon, California, at anytime between April 12, 2001 and January 27, 2007, in a unit presently represented for purposes of collective bargaining by Amalgamated Transit Union Local 1309.

(Id.,) On the other hand, if the Court certifies a new class, it would be defined as:

> All bus operator employees of Defendant First Transit, driving bus routes associated with San Diego Metropolitan Transit System in or around the City of El Cajon, California, at anytime between April 12, 2001 and September 30, 2001, in a unit presently represented for purposes of collective bargaining by Amalgamated Transit Union Local 1309.

(Id.) In support of their motion, Plaintiffs submitted nine driver declarations and the declaration of Plaintiffs' counsel. Defendant First Transit filed an opposition, evidentiary objections,[3] a declaration by its counsel, and a lodgement of exhibits. Plaintiffs filed a reply and another declaration by their counsel. The Court heard oral argument on February 8, 2010.

**DISCUSSION**

Plaintiffs argue the Court should exercise its discretion to amend the prior class certification order to include the claims against Defendant First Transit. According to Plaintiffs, all of the requirements for class certification have been met. First Transit disputes this, arguing that Plaintiffs

---

[3] First Transit makes a number of evidentiary objections to allegations in the Plaintiffs' motion and supporting declarations, arguing that they either lack foundation (Fed. R. Evid. 602), amount to hearsay (Fed. R. Evid. 802), or are irrelevant (Fed. R. Evid. 402). However, unlike evidence presented at a summary judgment stage, evidence presented in support of class certification need not be admissible at trial. See Mazza v. Am. Honda Motor Co., 254 F.R.D. 610, 616 (C.D. Cal. 2008) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 187 (1974)). Moreover, to the extent First Transit's objections are relevant at this stage of the proceedings, these objections are moot because they did not affect the Court's decision or are overruled.

1  have not met their burden in demonstrating that common issues predominate or that a class action is
2  superior to individual actions. First Transit further alleges class certification should be denied because
3  the law firm of Neyhart Anderson is not qualified to act as class counsel. Moreover, according to First
4  Transit, the Court should not exercise its discretion in this case because of undue delay, prejudice to
5  First Transit, and possible confusion to putative class members.

6  More importantly, though, First Transit argues the class cannot be certified because all class
7  claims are barred by the statutes of limitation. Thus, with respect to claims based on the Labor Code
8  and Wage Order 9, First Transit alleges the applicable statutes of limitation expired before the class
9  action was even filed on April 12, 2005. With respect to the UCL claim, First Transit argues the
10 statute of limitations expired on February 27, 2009 at the earliest, and July 22, 2009, at the latest.
11 According to First Transit, although the claims of the putative class members were tolled for the first
12 three-and-a-half years, any tolling ended either when Plaintiffs failed to timely move for class
13 certification with respect to First Transit (September 9, 2008), or when the Court granted class
14 certification with respect to Laidlaw only (February 2, 2009). In their reply, Plaintiffs argue First
15 Transit improperly conflates the issues of the running of the statute of limitations with the concept of
16 tolling. According to Plaintiffs, even if the individual claims are no longer tolled, that does not change
17 the fact that they are properly before the Court because they were *initially* timely filed.

18 Accordingly, the Court is faced with the following questions: (1) Are the putative class
19 members' claims against First Transit barred by the applicable statutes of limitation? (2) If the claims
20 are not time-barred, should the Court exercise its discretion to amend a prior class certification order,
21 or certify an additional class, where the deadline for bringing any motion for class certification has
22 long passed? (3) If so, have all of the requirements for class certification been met?

23 **I.      The class claims against First Transit are not time-barred.**
24        A.      Claims based on the Labor Code and Wage Order 9

25 First Transit argues that because it ceased operating the El Cajon facility on September 30,
26 2001, and Plaintiffs did not file their suit until April 12, 2005, all of the claims against First Transit
27 pursuant to the Labor Code and Wage Order 9 are time-barred by the applicable one-year and three-
28 year statutes of limitation. First, with respect to Plaintiffs' claims for recovery of penalties under the

Labor Code and Wage Order 9, First Transit alleges a one-year statute of limitations applies. See CAL. CIV. PROC. CODE § 340 (establishing a one-year statute of limitations for actions "upon a statute for a penalty or forfeiture"); Murphy v. Kenneth Cole Prod., Inc., 40 Cal. 4th 1094, 1102 (2007) (recognizing that "a one-year statute of limitations governs claims for penalties"). Next, with respect to Plaintiffs' claims for recovery of unpaid wages pursuant to the Labor Code and Wage Order 9, First Transit argues the three-year statute of limitations applies. See CAL. CIV. PROC. CODE § 338 (establishing a three-year statute of limitations for actions "upon a liability created by statute, other than a penalty or forfeiture"); Murphy, 40 Cal. 4th at 1114 (recognizing that a three-year statute of limitations applied to claims for lost wages under Section 226.7 of the Labor Code).

The Court declines to resolve these issues at this stage. First, the issue of claims seeking penalties is irrelevant because the Court has previously ordered all those claims against First Transit to be stricken from the complaint. [See Doc. No. 67]. Second, the Court need not decide at this stage whether any of the claims for unpaid wages under the Labor Code and Wage Order 9 are barred by the applicable statute of limitations. This appears to be an issue that First Transit should be required to bring by an appropriate motion, rather than in its opposition to the motion for class certification.

B.      Claims based on the Unfair Competition Law

First Transit next argues Plaintiffs' UCL claims against it are barred by the applicable four-year statute of limitations. See CAL. BUS & PROF. CODE § 17208. According to First Transit, the limitations period on UCL claims would have expired on September 30, 2005. However, First Transit agrees the filing of the complaint on April 12, 2005–171 days before the statute of limitations would have expired–tolled the running of the statute of limitations pursuant to Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974). Nonetheless, First Transit insists that any such tolling of the putative class claims does not continue into perpetuity. Thus, in American Pipe, the Supreme Court held that the tolling of the statute would end after the court denied class certification. 414 U.S. at 552-53. Moreover, First Transit argues the Ninth Circuit has clarified that under American Pipe, tolling ends if the putative class representatives either do not file a class certification motion by the time set by the trial court to do so or withdraw their class certification motion before it is ruled upon. See Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1019 (9th Cir. 2000) ("[W]e agree with the district court that whatever tolling applied, it ceased once the deadline for seeking class certification passed

on October 15, 1996."); In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1008 (9th Cir. 2008) (noting with apparent approval district court's conclusion that tolling ended when the class certification motion was withdrawn 9 years after the purported class action was filed). Accordingly, First Transit argues the statute of limitations on Plaintiffs' class claims against it expired either 171 days after Plaintiffs failed to move for class certification with respect to First Transit (February 27, 2009) or 171 days after class certification was granted with respect to Laidlaw only (July 22, 2009).

The Court, however, is not persuaded. As Plaintiffs correctly point out in their reply, First Transit's opposition "conflates two separate issues–first, the tolling of individual claims against First Transit during the pendency of this case, and second, if such individual claims are not tolled, whether the statute of limitations has expired." (Pl. Reply, at 3-4.) As a general matter, a statute of limitations provides that a given cause of action is not barred as long as it is filed within the applicable limitations period. See Norgart v. Upjohn Co., 21 Cal. 4th 383, 395 (1999); accord 51 AM. JUR. 2D *Limitation of Actions* § 19 (2009) (citing cases). Once timely filed, the action remains timely unless there are substantive changes with respect to the claims asserted or the parties joined. Cf. N.Y. Cent. & H.R.R. Co. v. Kinney, 260 U.S. 340, 345-46 (1922) (amendment allowed after the running of the statute of limitations where it "'merely expanded or amplified what was alleged in support of the cause of action already asserted'" (citation omitted)); Fidelity Title & Trust Co. v. Dubois Elec. Co., 253 U.S. 212, 216 (1920) (amendment allowed after the running of the statute of limitations where "the original declaration was sufficient and [] the amendment plainly left the cause of action unchanged"). Moreover, for purposes of a class action, the commencement of the action by class representatives "satisfie[s] the purpose of the limitations provision *as to all those who might subsequently participate in the suit* as well as for the named plaintiffs." Am. Pipe, 414 U.S. at 551 (emphasis added). As the Supreme Court noted, to hold otherwise "would frustrate the principal function of a class suit," which is to avoid multiplicity of action that would occur if every putative class member was forced to file a timely motion to intervene or a separate individual action while a class action was pending. Id.

First Transit fails to cite any authority to the contrary. All of the cases relied upon by First Transit deal with class actions where the individual claims being examined were brought either when

the individual *tried to intervene* into an already pending action or tried to file an *independent* action.[4] None of these cases dealt with the issue at play here–where there is only a single action and the individual claims being examined belong to putative class members on whose behalf the action was commenced. (See Compl. ¶ 6 (stating that Plaintiffs brought the action "on behalf of all current and former employees of defendants similarly aggrieved during the period relevant to this Complaint").) Accordingly, because Plaintiffs' class claims against First Transit were timely when filed, they remain timely in the context of this action and are not barred by the statute of limitations.

This outcome is supported by the rationale underlying a statute of limitations. "[S]tatutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" Am. Pipe, 414 U.S. at 554 (quoting Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 348-49 (1944)). However, defendant's rights are protected where,

> a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

Id. at 554-55. In the present case, Plaintiffs' complaint notified First Transit both of "the substantive claims being brought against [it]," as well as of "the number and generic identities of the potential plaintiffs who may participate in the judgment." Specifically, within the period set by the statute of limitations, First Transit knew there were claims asserted against it with respect to its operation of the El Cajon facility, and it knew that the size of the prospective litigation could potentially end up including all of the drivers at that facility during the relevant time. (See generally Compl.)

Accordingly, because the UCL class claims against First Transit were timely *when filed*, they are not barred by the applicable four-year statute of limitations. In light of this determination, the Court need not reach the separate issue of American Pipe tolling.

---

[4] See, e.g., Am. Pipe, 414 U.S. at 552-53 (considering *motions to intervene* by purported class members after class certification was denied); In re Hanford, 534 F.3d at 1008 (*individual suit* filed while a separate putative class action was pending); Aguilera, 223 F.3d at 1018-19 (examining an *individual action* that was tolled by a separate putative class action); accord Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350-52 (1983) (discussing American Pipe tolling in the context of members of the class who "make timely motions to intervene" or "choose to file separate suits").

**II. The Court declines to exercise its discretion to amend its prior class certification order or to certify a new class with respect to First Transit.**

A. Parties' arguments

First Transit alleges that for a court to amend its prior certification order, the moving party must establish materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent. See 1 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 7:47 (4th ed. 2002). In the present case, First Transit argues Plaintiffs cannot show a basis supporting amendment of the prior certification order. First Transit also alleges amendment cannot be granted because, in light of the running of the statutes of limitation on the Labor Code and Wage Order 9 claims against it, the class members' potential recovery against Laidlaw is significantly different and greater in scope than against First Transit. Finally, First Transit argues any amendment would require additional notices to be sent out, resulting in possible confusion by the putative class members as well as further delays.[5]

Plaintiffs reply that the Court should exercise its discretion to amend the prior certification order because no prejudice will result to Defendants and there will be no confusion by the putative class members. According to Plaintiffs, no prejudice would result because the already-certified Laidlaw class is simply a continuation of the group of First Transit drivers that Plaintiffs now seek to certify as a class. Moreover, there will be no prejudice because First Transit has already purchased Laidlaw, resulting in a single entity. Finally, any confusion by the putative class members can be alleviated by sending out a separate or supplemental notice that would inform them that while the claims against Laidlaw remain certified, any equivalent meal and rest period claims they have against First Transit from April 12, 2001 to September 30, 2001 are also certified.

B. Analysis

"Determination of right to bring a class action under Rule 23, F.R.Civ.P., is in the considered discretion of the trial court." Hornreich v. Plant Indus., Inc., 535 F.2d 550, 552 (9th Cir. 1976). Once

---

[5] First Transit also argues any amendment would be futile in light of the running of the statute of limitations on Plaintiffs' UCL claims. However, as already noted, the statute of limitations on the UCL claims against First Transit has not expired because those claims were timely *when filed*. First Transit's reliance on Johnson v. Shalala, 2 F.3d 918 (9th Cir. 1993), is inapposite. In that case, the court unremarkably held that all claimants whose claims had lapsed *before* the class action was filed were barred from seeking relief. Id. at 923. As noted, that is not the case here, because First Transit agrees the UCL claims against it were *timely* when filed. (See Def. Opp, at 8.)

class certification is granted or denied, Federal Rules provide that the class certification order "may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C); accord Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1175 (9th Cir. 2007). Rule 23, however, does not provide a standard that the court must apply when ruling upon a motion to amend a prior class certification order. Rather, such decisions are left to the sound discretion of the district court. See Dukes, 509 F.3d at 1175 ("Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." (citation omitted)).

Nonetheless, at least some showing of good cause and lack of prejudice and undue delay should be made before amendment is allowed. See, e.g., Kilgo v. Bowman, 789 F.2d 859, 877-78 (11th Cir. 1986) (discussing lack of prejudice as one of the key factors for upholding the district court's expansion of the class after trial on the merits); O'Connor v. Boeing North Am., Inc., 197 F.R.D. 404, 410 (C.D. Cal. 2000) (noting that reconsideration of the earlier class certification order depends on "'the discovery of new facts or changes in the parties or in the substantive or procedural law'" (citation omitted)); Kramer v. Scientific Control Corp., 67 F.R.D. 98, 99 (E.D. Pa. 1975) ("[T]he proponents of revocation or modification of a class action Order should, at a minimum, show some newly discovered facts or law in support of their desired action."); NEWBERG ON CLASS ACTIONS, supra, § 7:47, n.15 ("[I]n 'deciding whether to modify its original class decision, the court should consider … also whether the parties or the class would be unfairly prejudiced by a change in proceedings at that point.'" (citing MANUAL FOR COMPLEX LITIGATION § 30.18 (2d ed.))).

*i.     Good cause*

It is questionable if Plaintiffs can demonstrate "good cause" for bringing the instant motion at such a late stage. The suit was commenced on April 12, 2005, and the Court eventually set September 9, 2008 as the deadline for filing any motions for class certification. Plaintiffs had all the necessary information to proceed with class certification against First Transit at the time the September 9, 2008 deadline came around. There is no indication that new facts were discovered or that there was any change in the law, such as would warrant bringing a motion to amend at this stage. Rather, it appears no class certification with respect to First Transit occurred due to an inadvertent mistake by Plaintiffs' counsel. (See Anderson Decl. ¶¶ 7-10.) While this might very well give rise to "excusable neglect," it certainly does not supply Plaintiffs with "good cause" for their delay.

1  The Court, of course, is sympathetic to the fact that the claims of the putative class members at issue here might now be forever barred–due to no fault of their own–if the American Pipe tolling is no longer available to them as First Transit contends. However, in light of the other factors discussed below, this is insufficient by itself to warrant the exercise of this Court's discretion.

### ii. Undue delay

Rule 23 provides that "[a]t an *early practicable time* after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A) (emphasis added). No specific time exists, however, and the court can exercise its discretion to alter or amend its prior ruling at a later stage of the proceedings or even after a decision on the merits. See NEWBERG ON CLASS ACTIONS, supra, § 7:12 (citing cases).

In the present case, however, substantial delay warrants against exercising the Court's discretion. Fourteen months have passed between the date when Plaintiffs were supposed to file their motion for class certification with respect to First Transit and when they filed their Ex Parte Application. During that time, discovery has been completed, class notices with respect to the Laidlaw class have been sent out, the Court has ruled on cross-MSJs brought by Plaintiffs and Laidlaw, settlement negotiations were undertaken, and expert disclosure reports have been prepared. Granting Plaintiffs' instant motion at this stage will likely result in an additional delay of six to nine months, while new or supplemental class notices are sent out, parties bring their respective cross-MSJs, and new expert disclosure reports are prepared. Accordingly, the substantial delay that took place and that is likely to take place weighs against the exercise of the Court's discretion in this case.

### iii. Prejudice

The Court previously found that First Transit "will suffer little if any prejudice if the Court allows Plaintiffs to *file* their supplemental motion for class certification." (See Order Granting Ex Parte Appl., at 5-6 [Doc. No. 185] (emphasis added).) In so concluding, the Court noted that First Transit was named in the complaint from the very beginning, its operation of the El Cajon facility was "virtually identical" to Laidlaw's operation, and First Transit has since purchased Laidlaw and is currently represented by the same counsel. (Id. at 6.)

Nonetheless, while no prejudice resulted from *filing* the motion for supplemental class certification, the Court believes *allowing* amendment of an existing class or certification of a new class

1  at this late stage will be unduly prejudicial to First Transit. Although First Transit might have had
2  notice of class claims against it when the complaint was filed, it is reasonable to assume that Plaintiffs'
3  failure to move for certification against First Transit–while Plaintiffs moved for, and were granted,
4  certification against Laidlaw–could have signaled to First Transit that it only needs to worry about the
5  claims of individual plaintiffs. Federal courts in other contexts have held that where the plaintiffs
6  moved for class certification that was *narrower* than the class definition asserted in the complaint,
7  their asserted class was then limited to that more narrow definition. See, e.g., Smith v. Pennington,
8  352 F.3d 884, 894 (4th Cir. 2003) ("[W]hen a plaintiff moves for class certification by asserting an
9  unambiguous definition of his desired class that is more narrow than is arguably dictated by his
10 complaint, his asserted class for tolling purposes may be limited to that more narrow definition.");
11 Sawtell v. E.I. du Pont de Nemours & Co., 22 F.3d 248, 253-54 (10th Cir. 1994) (same).

12      Moreover, this case concerns events that took place almost nine years ago. At trial, the focus
13 will necessarily be on documents and witnesses from that time period. As First Transit persuasively
14 argues, over the past fourteen months, it had no reason to preserve and/or seek out documents or
15 witnesses relating to the class portions of the complaint. The fact that it might have participated in
16 some of the depositions, or that it is now represented by the same counsel as Laidlaw, does not
17 mitigate that prejudice. Accordingly, because more than a year has passed with First Transit relying
18 on the lack of class certification against it, First Transit will undoubtedly suffer undue prejudice if the
19 Court were to amend its prior certification order or certify a new class at this late stage.

20      *iv.    Confusion*

21      Although confusion is possible if the Court certifies a new class or amends its prior class
22 certification order, any such confusion will likely be reduced by a proper notice. As Plaintiffs suggest,
23 any such notice can clarify to the putative class members that while the claims against Laidlaw remain
24 certified, any equivalent meal and rest period claims they have against First Transit from April 12,
25 2001 to September 30, 2001 are also certified.

26      C.    Conclusion

27      In light of the substantial delay in bringing the motion for class certification with respect to
28 First Transit and the undue prejudice that would result, the Court declines to exercise its discretion
   to amend the prior class certification order or to certify a separate class.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' UCL class claims against First Transit are not barred by the statute of limitations because they were timely when filed. However, in light of the substantial delay in bringing the present motion and the undue prejudice that First Transit would suffer, the Court declines to exercise its discretion to either amend the prior class certification order or certify a new class. Accordingly, the Court **DENIES** Plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

DATED: February 11, 2010

IRMA E. GONZALEZ, Chief Judge
United States District Court